IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| DENIS MBULIH,<br><br>Plaintiff,<br><br>vs.<br><br>SHERIFF JERRY GREEN et al.,<br><br>Defendants. | CASE NO. 4:26-cv-1909<br><br>DISTRICT JUDGE<br>JEFFREY J. HELMICK<br><br>MAGISTRATE JUDGE<br>JAMES E. GRIMES JR.<br><br>**REPORT AND RECOMMENDATION** |

Denis Mbulih, a Cameroonian citizen facing removal from the United States, filed a *pro se* petition for writ of habeas corpus, Doc. 1, and a motion for preliminary injunction, Doc. 7, challenging his pre-removal detention at Mahoning County Justice Center, which began on June 28, 2026, Doc. 1-1, at 3. The Court referred this matter to a Magistrate Judge under Local Rule 72.2 for the preparation of a Report and Recommendation. For the following reasons, I recommend that the Court *sua sponte* deny Mbulih's habeas petition and deny as moot Mbulih's motion for preliminary injunction.

**Background**

To provide relevant background, the Court draws the following undisputed facts from *Mbulih v. ICE (Mbulih I)*, No. 4:26-cv-0530, 2026 WL 1429224 (N.D. Ohio May 21, 2026).

Mbulih entered the United States as a non-immigrant visitor in June 2010 and overstayed his visa by the time the Department of Homeland

Security (DHS) initiated removal proceedings against him. *Id.* at *1. An immigration judge (IJ) found Mbulih removable to Cameroon, and the Board of Immigration Appeals (BIA) affirmed. *Id.* Mbulih then sought relief from removal under the Convention Against Torture (CAT), but an IJ denied the relief, finding that Mbulih had engaged in a terrorist activity by providing material support to the Ambazonia Governing Council (AGC), an anglophonic separatist group in Cameroon. *Id.*; *see also* 8 U.S.C. § 1182(a)(3)(B) (classifying aliens who engaged in a terrorist activity as inadmissible). On April 20, 2026, the BIA affirmed the denial and issued a final order of removal. *See Mbulih I*, 2026 WL 1429224, at *4. Mbulih moved for a stay of his removal, but the Sixth Circuit denied the stay. *See Mbulih v. Blanche*, No. 26-3450 (6th Cir. July 30, 2026) (denying Mbulih's motion to stay removal).

Meanwhile, in December 2025, local police arrested Mbulih in Ohio and charged him with aggravated burglary, aggravated menacing, assault, and resisting arrest. *Mbulih I*, 2026 WL 1429224, at *2. Although the police released Mbulih days later, U.S. Immigration and Customs Enforcement (ICE) immediately took him Mbulih into custody and detained him at the Northeast Ohio Correctional Center (NEOCC). *Id.* The assigned IJ denied Mblulih's application for release on bond, concluding that Mbulih was "subject to mandatory detention … for terrorism-related grounds, including providing material support to a terrorist organization." *Id.*; *see* 8 U.S.C. § 1226(c)(1) ("The Attorney General shall take into custody any alien who … is inadmissible

under section 1182(a)(3)(B) of this title"). The IJ also found that Mbuli posed "a danger to the community." *Mbulih I*, 2026 WL 1429224, at *2; *see* 8 U.S.C. § 1226(c)(4) (authorizing the release of an alien subject to mandatory detention only if "the alien will not pose a danger to the safety of other persons or of property"). In May 2026, Mbulih was transferred from NEOCC to a county jail for his state criminal proceedings. *Mbulih I*, 2026 WL 1429224, at *2.

While detained at the NEOCC, Mbulih filed his first habeas petition against ICE and DHS, but another unit of this Court dismissed the petition, finding that Mbulih was subject to mandatory detention. *See id.* at *4, 5. The Court explained that because the BIA had issued a final order of removal, Mbulih's detention was "governed by 8 U.S.C. § 1231(a)(2)(A), which provides that '[u]nder no circumstance during the removal period shall the Attorney General release an alien who has been found inadmissible under section … 1182(a)(3)(B) of this title.'" *Id.* at *4. And because an IJ had found Mbulih to be removable on terrorism-related grounds under 8 U.S.C. § 1182(a)(3)(B), Mbulih's detention was mandatory. *Id.* Thereafter, in June 2026, a judge in Mbulih's state criminal proceedings released Mbulih on bond and placed him under house arrest with an ankle monitor. Doc. 1-1, at 2. ICE, however, took Mbulih into custody again and transferred him to Mahoning County Justice Center, where Mbulih has remained detained. Doc. 1-1, at 3.

**Legal Standard**

Historically, "[a] writ of habeas corpus has served a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *INS v. St. Cyr*, 533 U.S. 289, 301 (2001). The United States Constitution guarantees that the writ of habeas corpus is "available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2). By the same token, 28 U.S.C. § 2241 confers upon the federal district courts the power to issue a writ of habeas corpus to any individual who demonstrates that the person is "in custody in violation of the Constitution or laws of the United States." 28 U.S.C. § 2241(c)(3).

The protections offered through a writ of habeas corpus also extends to noncitizen petitioners in immigration cases. *Kourouma v. Hildebrand*, No. 1:26-cv-00587, 2026 WL 972363, at *4 (N.D. Ohio, Apr. 10, 2026), *report and recommendation adopted*, 2026 WL 1601260 (N.D. Ohio June 4, 2026). To be sure, district courts are limited in their authority to grant relief in immigration cases, *see Elgharib v. Napolitano*, 600 F.3d 597, 607 (6th Cir. 2010) (finding that a district court lacks jurisdiction to consider removal orders), but they still retain jurisdiction to consider whether a noncitizen is lawfully detained, *See Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 117 (2020) (describing habeas corpus as the "appropriate remedy to" determine the legality of a person's custody) (citation and internal quotation marks omitted).

**Discussion**

*Jurisdiction*

As a preliminary matter, the Court must determine who are the proper respondents in this case. *See Mbulih I*, 2026 WL 1429224, at *3 ("Respondent propriety is a jurisdictional requirement in the Sixth Circuit."). "The federal habeas statute straightforwardly provides that the proper respondent to a habeas petition is 'the person who has custody over [the petitioner].'" *Rumsfeld v. Padilla*, 542 U.S. 426, 434 (2004) (quoting 28 U.S.C. § 2242). Similarly, when a court grants a petition for a writ of habeas corpus, "[t]he writ … shall be directed to the person having custody of the person detained." 28 U.S.C. § 2243. This is because "[t]he writ of habeas corpus does not act upon the [petitioner] who seeks relief, but upon the person who holds him in what is alleged to be unlawful custody." *Braden v. 30th Jud. Circuit Ct. of Ky.*, 410 U.S. 484, 494–95 (1973). A court has jurisdiction over a habeas corpus petition only if the court has personal jurisdiction over the petitioner's custodian, *Roman v. Ashcroft*, 340 F.3d 314, 319 (6th Cir. 2003) (citing *Braden*, 410 U.S. at 495), who is "'the individual having day-to-day control over the facility in which [the alien] is being detained,'" *id.* (quoting *Vasqeuz v. Reno*, 233 F.3d 688, 695 (1st Cir. 2000)). In the immigration context, therefore, a detained alien must designate his immediate custodian as the respondent to his habeas petition." *Roman*, 340 F.3d at 320; *Mbulih*, 2026 WL 1429224, at *3.

In *Roman*, the Sixth Circuit held that the "immediate custodian" means the ICE Field Office Director for the district in which a detention facility is located, rather than the warden of the detention facility. 340 F.3d at 320–21. The Sixth Circuit observed that the facility warden is a mere "agent" who acts "solely pursuant to the direction of" the ICE Field Office Director and therefore lacks actual custody over detained aliens. *Id.* at 320; *Cervantes-Munoz v. Raycraft*, 831 F. Supp. 3d 505, 510 (E.D. Mich 2026) (applying the holding in *Roman*). The Sixth Circuit also stated that "the Attorney General does not have actual physical custody of aliens detained by [ICE]," noting that "courts … have concluded that the Attorney General is not generally a proper respondent to any habeas corpus petition." *Id.* at 323–24; *see Blanco Cabrera v. Raycraft*, No. 4:26-cv-0085, 2026 WL 904606, at *3 (N.D. Ohio April 2, 2026) (report and recommendation recommending dismissal of all respondents other than ICE Field Office Director, including the Attorney General); *Martinez Hernandez v. Raycraft*, No. 3:25-cv-02591, 2026 WL 698639, at *3 (N.D. Ohio Mar. 12, 2026).

Here, Mbulih named as respondents the warden of Mahoning County Justice Center, the Attorney General, and ICE or DHS, but did not name the local ICE Field Office Director responsible for Mbulih's present detention. Doc. 1, at 1; *Mbulih I*, 2026 WL 1429224, at *3 (noting that "ICE or DHS *writ large*" is not a proper respondent for a federal habeas petition). Because Mbulih fails to name a proper habeas respondent in his petition, the Court lacks jurisdiction

to grant habeas relief.[1] *See Gulpa-Lumbi v. Hoover*, No. 4:26-cv-38, 2026 WL 1109358, at *2 (N.D. Ohio Apr. 24, 2026) ("Because [the ICE Field Office Director] is not a party to this case, I lack jurisdiction to adjudicate [the petitioner's] petition.").

*Merits*

Even if Mbulih named a proper respondent, however, his habeas petition still fails on merit. Because Mbulih received a final order of removal, his detention is governed by 8 U.S.C. § 1231. Under the statute, "when an alien is ordered removed, the Attorney General shall remove the alien from the United States within a period of 90 days." 8 U.S.C. § 1231(a)(1)(A). This 90-day removal period begins at the latest of (1) "[t]he date the order of removal becomes administratively final," (2) "the date of a court's final order" staying removal, or (3) "the date the alien is released from detention or confinement" if the alien has been confined or detained under a non-immigration process. 8 U.S.C. § 1231(a)(1)(B). In turn, a removal order becomes administratively final at the time of "a determination by the [BIA] affirming [the] order." 8 U.S.C. §

---

[1] To be sure, the Sixth Circuit acknowledged that someone other than an immediate custodian could be the proper respondent to a habeas petition in "extraordinary circumstances … necessary to preserve a person's access to habeas corpus relief." *Roman*, 340 F.3d at 325–26. In particular, "an exception might be appropriate if [ICE] were to exercise its transfer power in a clear effort to evade an alien's habeas petitions." *Id.* at 326; *see also Cuyun v. Raycraft*, No. 3-25-cv-02785, 2026 WL 362791, at *2 (N.D. Ohio Feb. 10, 2026) (noting that some district courts in the Sixth Circuit recently declined to "dismiss[ ] the higher-level officials from similar proceedings"). Here, however, no extraordinary circumstances exist.

1101(a)(47)(B). Moreover, the Government may continue to detain individuals who are deemed "inadmissible" or posing "a risk to the community" beyond the removal period. 8 U.S.C. § 1231(a)(6).

In *Zadvydas v. Davis*, the Supreme Court made clear that the Government may not detain aliens indefinitely following a final order of removal. 533 U.S. 678, 689 (2001). Indeed, "once removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute." *Id.* at 699. That said, the Supreme Court noted that it "doubt[ed] that when Congress shortened the removal period to 90 days in 1996 it believed that all reasonably foreseeable removals could be accomplished in that time." *Id.* at 701. As a result, the Supreme Court concluded that detention for up to six months following a final order of removal is "presumptively reasonable." *Id.* Furthermore, even after that six-month period expires, the Court noted that continued detention may be lawful unless "there is no significant likelihood of removal in the reasonably foreseeable future." *Id.*

Here, the BIA issued Mbulih's final order of removal on April 20, 2026, and the Sixth Circuit denied Mbulih's motion for a stay of removal. *Mbulih I*, 2026 WL 1429224, at *2. In other words, Mbulih has been in detention for about 135 days since the issuance of the final removal order. While this exceeds the 90-day detention period contemplated by Section 1231(a), this still falls within the "presumptively reasonable" six-month detention period under *Zadvydas*, 533 U.S. at 701. Even though this presumption is not an absolute

bar to granting a habeas relief, it requires Mbulih to demonstrate that his removal is not reasonably foreseeable even before the six months have elapsed, such that his continued detention violates due process. *Id.*; *see Lin v. Warden of Mahoning County Jail*, No. 4:26-cv-0842, 2026 WL 1827465, at *4 (N.D. Ohio June 24, 2026).

Mbulih fails to meet his burden under *Zadvydas*, as the record fails to show any "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." 533 U.S. at 701. To the contrary, 8 U.S.C. § 1231(a)(6) expressly authorizes detention beyond the 90-day removal period for any aliens who are ordered removed on the ground that they are "inadmissible under section 1182 of this title … or who ha[ve] been determined by the Attorney General to be a risk to the community." In this case, an IJ had found Mbulih to be inadmissible on "terrorism-related grounds" under Section 1182 and determined that he posed "a danger to the community." *Mbulih I*, 2026 WL 1429224, at *2; *Zadvydas*, 533 U.S. at 696 (recognizing that "terrorism or other special circumstances" might require "heightened deference" to the other branches of the Government). Mbulih's present detention, therefore, is not unlawful.

**Conclusion**

For all the reasons set forth above, I recommend that the Court *sua sponte* DISMISS or alternatively DENY Mbulih's petition for a writ of habeas corpus. Doc. 1. In light of this recommendation, Mbulih's motion for preliminary injunction, Doc. 7, should also be DENIED as MOOT.

Dated: September 2, 2026

*/s/ James E. Grimes Jr.*
James E. Grimes Jr.
U.S. Magistrate Judge

**OBJECTIONS**

Any objections to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation. 28 U.S.C. § 636(b)(1). Failure to file objections within the specified time may forfeit the right to appeal the District Court's order. *See Berkshire v. Beauvais*, 928 F.3d 520, 530–531 (6th Cir. 2019).